■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLTON LEWIS, Appellant.—Judgment unanimously reversed on the law, count two of the indictment dismissed and new trial granted on count one of the indictment. Memorandum: Defendant and codefendants Willie McKee and Gregory Brown were charged with murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]) in connection with the beating death of Cheryl Coleman. Prior to trial, defendant moved to sever the charges against him from those against McKee and Brown. That motion was denied. Thereafter, McKee entered a plea of guilty to manslaughter in the first degree and agreed to testify for the prosecution at the trial of defendant and Brown.

McKee testified that he, Brown and defendant all participated in the beating death of Coleman in an apartment at the corner of Lafayette and Salina Streets in the City of Syracuse. According to McKee, Coleman had agreed to have sexual relations with the three men in exchange for two bags of cocaine. After having sex with the men and being given fake cocaine by Brown, Coleman became enraged. When she began screaming and cursing at Brown, he picked up a two-by-four lying in the hallway and repeatedly hit Coleman in the head and face. McKee testified that he and defendant thereafter took turns hitting Coleman with the board. Although physical evidence of defendant's presence was collected from the apartment, none conclusively established either that defendant had sex with Coleman or that he participated in her beating.

Upon his apprehension by police, defendant gave a statement wherein he admitted that he was in the apartment at

the time of Coleman's death. Defendant indicated, however, that it was Brown who was first in the apartment with Coleman, that only Brown had sex with Coleman, that it was Brown who gave Coleman the fake cocaine, that only Brown bludgeoned Coleman, and that McKee came to the apartment only after defendant went to get him.

Although defendant's statement was found admissible at a pretrial *Huntley* hearing, at trial, the court, in order to protect the *Bruton* rights *(see, Bruton v United States,* 391 US 123) of Brown, redacted all references to Brown in defendant's statement. That redaction transformed defendant's statement from one which was substantially exculpatory to one which was highly inculpatory. The redacted statement that was admitted at trial indicates that only defendant was present with Coleman prior to her bludgeoning and that, after defendant had provided Coleman with fake drugs, he took McKee to the premises and told McKee that Coleman was probably dead inside the apartment. The prejudice suffered by defendant as a result of the redaction was exacerbated by testimony from an investigator that defendant admitted being in the apartment at the time Coleman was killed.

In determining whether the trial court erred in denying severance, this court is empowered to engage in "a retrospective view in determining whether 'injustice or impairment of substantial rights unseen at the beginning' has occurred" *(People v La Belle,* 18 NY2d 405, 409, quoting *People v Fisher,* 249 NY 419, 427; *see, People v Mahboubian,* 74 NY2d 174, 185; *People v Lopez,* 68 NY2d 683, 685). Thus viewed, it was manifest injustice to allow the People to put into evidence only those portions of defendant's statement which incriminated him, while deleting the exculpatory portions *(see, People v La Belle, supra,* at 411). We conclude that defendant suffered undue prejudice as a result of the admission of his redacted statement *(see, People v Mahboubian, supra,* at 186-188; *People v La Belle, supra,* at 409-411). If there had not been a joint trial, defendant "would have been entitled to have his entire statement, including the exculpatory portions, put into evidence, rather than this warped version of what he had told the [police]" *(People v La Belle, supra,* at 410). Therefore, we conclude that the court abused its discretion in denying defendant's motion for severance and that defendant was thus deprived of a fair trial.

The People's argument that this issue is unpreserved is without merit. Defense counsel moved for severance and, when the People sought to admit the redacted statement, he

objected and argued that the unredacted statement should be admitted.

Additional error was committed when the court insisted on taking the jury's verdict in the absence of defense counsel. At approximately 11:45 A.M. on the second day of deliberations, the court instructed counsel that court would stand adjourned until 1:15 P.M. When the jury announced at approximately 1:00 P.M. that it had reached a verdict, the court summoned counsel's partner, who had not served as co-counsel and thus was unfamiliar with the case, and instructed him to sit with defendant while the verdict was rendered rather than waiting for defense counsel to return at 1:15. That was error.

Defendant had an absolute right to have his counsel present when the verdict was announced (see, CPL 310.40 [1]; People v Ciaccio, 47 NY2d 431, 436). The court's insistence on proceeding to take the verdict without defense counsel deprived defendant of his right to assistance of counsel (see, People v Felder, 47 NY2d 287, 296).

Because the jury failed to render a verdict on the second count of the indictment charging defendant with criminal possession of a weapon in the fourth degree, defendant must be deemed to have been acquitted of that charge, and that count of the indictment is dismissed (see, CPL 310.50; People v Thompson, 161 AD2d 1203; People v Thompson, 156 AD2d 961).

We have considered defendant's remaining contentions and find them to be without merit. (Appeal from Judgment of Onondaga County Court, Cunningham, J.—Murder, 2nd Degree.) Present—Denman, P. J., Green, Pine, Balio and Fallon, JJ.