Bellacosa, J.
(dissenting). In my view, the order of the Appellate Division rejecting CPL 440.10 collateral review relief and unanimously upholding the 1982 judgment of conviction after a jury verdict finding defendant guilty of murder should be affirmed. The harmless error doctrine is applicable and our approved, standard analysis — employed by the Appellate Division in this case — is cogently supportable on the record (195 AD2d 572; People v Hamlin, 71 NY2d 750, 758).
To begin with, appellant-defendant’s own detailed, voluntary confession was admitted as direct evidence in this case. It brought before the jury his admission that before exiting the vehicle with one Carlos Richards, the shooter, defendant knew that Richards had a gun and that Richards intended to rob Barrett. Defendant also testified at trial that he was driving in the car with Richards before the shooting and that he himself was shot at the location where the robbery occurred.
To be sure, defendant tried to retreat at trial somewhat from his confession to mitigate his participation and knowledge in the crime and, thus, to exculpate himself from guilt. In no way, however, should defendant’s testimony in this harmless error setting be characterized, as the majority does, as a "reversal of his previous position” (majority opn, at 272, n 3), singularly displacing the dispositive focus of this case, namely, the totality of the evidence and the impact of the erroneously admitted codefendant’s confession. Defendant’s self-serving, incomplete retraction becomes particularly signifi *279 cant in this harmless error context, quite to the opposite effect from the crucial weight the majority gives it. The reason I advance for that conclusion is that the jury also properly heard compelling testimony from a police officer who arrived at the crime scene seconds after the shooting and spoke with the victim of the robbery, as he lay dying in the street.
That officer testified that victim Barrett was able to inform the police that he was robbed by three men and that he, the victim, "might have shot one of them.” The ironclad link connecting the direct and circumstantial evidentiary components to defendant is soldered with an unbreakable lock of documentary, medical, scientific evidence — the expert ballistics evidence tying the defendant’s wound to the victim’s gun as its undeniable source and cause. Nothing could have impressed the jury more than the proof that the bullet removed from this appellant-defendant’s abdomen was fired from victim Barrett’s .38 caliber Smith & Wesson revolver. Defendant’s wound from the dying victim’s gun thus binds this defendant-appellant to this crime by way of the dying victim’s statement that he shot one of his three assailants. In the vernacular, this ballistics evidence goes one better than even a "smoking gun,” beyond peradventure of doubt.
People v Hamlin (71 NY2d 750, 758, supra) teaches:
"In making [the harmless error] assessment, we consider a number of factors, including how comprehensive defendant’s statement is and whether it satisfactorily explains his or her part in the crime without reference to the codefendant’s statement, whether it is corroborated or contradicted by other objective evidence, and whether defendant has reiterated it on one or more subsequent occasions (see, Schneble v Florida, 405 US 427, 431, supra). If the defendant has repudiated the confession, a similar, detailed statement by a codefendant may be particularly prejudicial to the minds of a jury instructed to decide whether defendant’s statement was voluntary (see, Cruz v New York, 481 US, at [191-192], 107 S Ct, at 1718, supra; People v Pitts, 71 NY2d 923; cf., Schneble v Florida, supra). ” (Emphasis added.)
Applying these criteria to this case, I emphasize the corroboration by objective scientific evidence in this case and I note the distinguishing feature of defendant’s trial testimony, which *280 was not a "repudiation” but a newly spun, minimized version of his involvement in the crime. The majority, thus, mischaracterizes, overemphasizes and misapplies the latter component of the test.
Defendant’s confession and his trial testimony acknowledgement of presence and other activity at the crime scene — he did not retract those central features in his trial testimony but, rather, confirmed them — and the dying victim’s "testimony” through the officer propel this defendant’s guilt beyond the sphere of reasonable doubt into the realm beyond a moral certainty. My examination of this record discloses no reasonable possibility (see, People v Crimmins, 36 NY2d 230, 237) that the jury’s assessment of appellant-defendant Eastman’s guilt was in any cognizable way affected by the confession of the other codefendant (People v Hamlin, 71 NY2d 750, 758, supra), whose confession under the retroactive application of Cruz v New York (481 US 186) should not have been admitted at defendant’s trial.
Defendant was proved guilty beyond a reasonable doubt, and I am satisfied, as were the lower courts, that the belated collateral review of the Cruz error bears no reasonable possibility of having affected the jury’s well-considered verdict of guilt based on the overwhelming proof, beyond a reasonable doubt, proffered against defendant.
Chief Judge Kaye and Judges Simons, Titone, Smith and Levine concur with Judge Ciparick; Judge Bellacosa dissents and votes to affirm in a separate opinion.
Order reversed, etc.